FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 AUG -9

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| ANITA S. DUCHOCK, | ) | |
| | ) | CIVIL ACTION NUMBER |
| Plaintiff, | ) | |
| | ) | 99-C-1756-S    **ENTERED** |
| v. | ) | |
| | ) | AUG  9 2000 |
| UNITED PARCEL SERVICE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION GRANTING
PARTIAL SUMMARY JUDGMENT**

On July 8, 1999, plaintiff Anita S. Duchock brought this action against her employer, United Parcel Service, Inc. ("UPS") alleging sexual harassment,[1] retaliatory discharge, and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended; violation of the Family and Medical Leave Act, 29 U.S.C. §2601 et seq. ("FMLA"); and breach of contract. Pending before the Court is defendant's Motion for Summary Judgment. Upon careful consideration of all submitted materials, the Court concludes that Defendant is entitled to partial summary judgment on plaintiff's sexual harassment, retaliatory discharge, FMLA, and breach of contract claim.

_____

[1] Plaintiff concedes that her sexual harassment and hostile work environment claim under Title VII of the Civil Rights Act of 1964 is due to be denied.

1



## I. BACKGROUND

Plaintiff Anita Duchock was formerly employed by UPS as an Account Executive and Customer Service Supervisor. The events which preceded this lawsuit began in mid-1996 when plaintiff was allegedly sexually harassed by a co-worker, Mike Purser. Pl. Depo., pp. 34-36. Like plaintiff, Purser was an Account Executive and plaintiff did not report to him in any way. Pl. Depo., p. 36. Purser is the only UPS employee identified by Duchock as a participant in misconduct. Pl. Depo., p. 35 Because plaintiff concedes that her allegation of sexual harassment is due to be dismissed, the Court will not discuss the facts surrounding this allegation.

On January 13, 1997, plaintiff notified then District Sales Manager, Sergio Torres, that she was resigning her employment with UPS because of the alleged misconduct of Purser.[2] Pl. Depo., p. 75. The following day, January 14, 1997, plaintiff's immediate supervisor, Carl Rhodes met with her and her husband at their home to discuss her resignation. Pl. Depo., pp. 44-45, 74. The next day plaintiff's husband informed Rhodes that plaintiff had a head-on collision that her husband believed to have been a suicide attempt. J. Duchock Depo., pp. 20-21; Pl. Depo., p. 65. He indicated that plaintiff was hospitalized with minor injuries, but would be transferred to Hill Crest Mental Hospital later that day. J. Duchock Depo., p. 31; Pl. Depo., p. 66. Plaintiff's husband asked that UPS hold a position open for her despite her tendered resignation. J. Duchock Depo., p. 21; Rhodes

---

[2]Plaintiff told Torres that she was quitting because of Purser's alleged mishandling of her expense account and that Purser was the likely perpetrator of an alleged "baby formula" incident.

2

Depo., pp. 67-68, 71.

During plaintiff's absence, UPS filled her position; however, when Duchock was released to return to work in February 1997, she was allowed to return to work in a customer service (sales support) supervisor position in which she supervised fourteen people. Pl. Depo., p. 67-71; Rhodes Depo., pp. 72-73, 75-76. The customer service supervisor position was a lateral transfer. Pl. Depo., p. 79; Rhodes Depo., pp. 82-83.

Plaintiff worked without incident for approximately 10 months, until she failed to show for work on Monday, December 15, 1997 and Tuesday, December 16, 1997 during UPS's "peak season" without calling. Gillian Depo., p. 84, Ex. 1; UPS's Responses to Plaintiff's Interrogatories No. 13. On December 16, 1997, plaintiff's supervisor, John Elkins, called plaintiff to inquire about her absences. UPS's Responses to Plaintiff's Interrogatories No. 13; Pl. Depo., p. 81; Gillian Depo., Ex.1. Plaintiff told Elkins that she was having personal problems and that she wanted to take a leave of absence. Pl. Depo., pp. 81-82, 99, 101, 102. Elkins called plaintiff again and told her he needed to know more specifically the reason she was requesting a leave of absence. Pl. Depo. p. 102. Plaintiff told Elkins that she and her husband were having marital problems. Pl. Depo. pp. 81, 82, 101, 102.[3] Elkins subsequently tried to contact plaintiff and was told by another unidentified female at plaintiff's residence that plaintiff was not taking calls. UPS's Responses to Plaintiff's Interrogatories No. 13; Pl. Depo., Ex. 4; Gillian Depo., Ex.1

---

[3] Plaintiff had experienced a miscarriage two days prior to her request for leave; however, she never told anyone at UPS that she had experienced a miscarriage. Pl. Depo., p. 117.

On December 19, 1997, Elkins made contact with plaintiff and she again stated that she wanted a leave of absence. Gillian Depo., Ex.1. Elkins asked her what time frame she was looking for and she then said she would report to work on December 22, 1997. Pl. Depo., Ex. 4; UPS's Responses to Plaintiff's Interrogatories No. 13; Gillian Depo., Ex.1. However, on December 22, 1997, plaintiff again did not report to work. Id. Bill Gillian (who replaced Sergio Torres as District Sales Manager in June 1997) telephoned plaintiff and she repeated that she wanted a leave of absence due to marital problems. Pl. Depo., p. 104; Gillian Depo., pp. 9, 25, 34, 36, Ex.1. Gillian asked her how much time she need off and she responded that she did not know. Pl. Depo., p. 105; Gillian Depo., pp. 36-38, Ex.1.

On December 23, 1997, then Alabama District Human Resources Manager, Joe Rivera, spoke with plaintiff and she informed him that she had mailed her letter of resignation. Rivera told plaintiff that he did not want to accept her resignation, and asked that she arrange a time to meet with him to discuss the matter. Pl. Depo., pp. 84-85. On December 23, 1997, Rivera sent plaintiff a letter asking that plaintiff contact him "on or before January 5, 1999, to notify [him] of [her] decision in regards to [her] employment status with United Parcel Service. At that time, we will accept your letter of resignation reasons if you choose to follow through with your decision to resign." Pl. Depo., p. 84; Gillian Depo., p. 38.

On December 24, 1997, Bill Gillian received the certified letter of resignation from plaintiff along with her UPS ID card, American Express Corporate Card and her corporate ATT phone card. Pl. Depo., p. 85, 127-28, 180; Gillian Depo., p. 39, Ex.1. Upon receiving

4

the letter on December 24, 1997, Gillian filled out a separation form noting her resignation. (Jones Aff., Ex. 7)

On January 6, 1998, plaintiff and her husband met with Rivera and Gillian. Pl. Depo., pp. 85-86. Instead of allowing plaintiff a choice as indicated in the December 23, 1997 letter, Rivera asked plaintiff to sign the separation form which Gillian had prepared on December 24, 1997. Plaintiff refused to sign the separation form and said she would like to continue to work at UPS. Rivera told her that UPS had accepted her letter of resignation and did not have a job for her. Pl. Depo., pp. 85-86, Gillian Depo., p. 42. Plaintiff claims that Rivera said something to the effect of "we can't allow you to work for our company because last year might happen again." Pl. Depo., pp. 86-87. Plaintiff has no idea what Rivera meant by that statement. Pl. Depo., p. 87.

In April 1996, another employee, Scott Wade, indicated to his manager that he wanted to resign his employment with UPS because he wanted to become a firefighter. UPS's Response to Plaintiff's Interrogatories, No. 10. Wade indicated that the orientation at the Fire Department started the following week. Id. Wades manager encouraged him to stay with UPS and Wade decided that he would use his accrued vacation time at UPS to attend the Fire Department orientation and work at UPS during times he was not required to be at the orientation, so that he could determine whether this was the career choice he wanted to take. Id. The next week, Wade indicated to UPS that he decided that he would not resign his employment at UPS. Id.

In February 1998, UPS sent plaintiff the cash value of the stock she earned in 1997

5

through the Management Incentive Program. Pl. Depo., p. 88, 142-143. Plaintiff returned the check, claiming she did not know what it was for. Pl. Depo., pp. 87-88, 142-143. UPS ultimately reissued the check to plaintiff well after a year and the filing of this lawsuit. Pl. Depo., pp.123-124, 142-143.

## II. LEGAL STANDARDS

The law governing summary judgment is well settled. Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material facts and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). Once the movant has met its burden of establishing the lack of a genuine issue as to any material facts, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of material fact. See Chanel, Inc. v. Italian Activewear, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991). The court must view the facts in a light favorable to the non-moving party.

Under Title VII, it is unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, the "plaintiff must show that: (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and

(3) the adverse action was causally related to the plaintiff's protected activities." <u>Little v.United Technologies</u>, 103 F.3d 956, 959 (11th Cir. 1997).

To establish a prima facie case of gender discrimination, plaintiff must prove through direct or circumstantial evidence that the employer discriminated against her because of her sex. <u>See</u> <u>Wright v.Southland Corp.</u>, 187 F.3d 1287, 1293 (11th Cir. 1999).

Establishing a prima facie case of discrimination creates a presumption that the employer unlawfully discriminated against the employee. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993). This presumption shifts the burden to the defendant to produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. <u>See</u> <u>id.</u> When the defendant articulates a legitimate, nondiscriminatory reason for its decisions, the presumption is eliminated, and the plaintiff bears the burden of persuasion that the defendant's proffered reasons are a mere pretext for discrimination. <u>See</u> <u>id.</u>

Summary judgment is appropriate in discrimination cases where the evidence is insufficient to establish a prima facie case, <u>see</u> <u>Holifield v. Reno</u>, 115 F.3d 1555, 1563-64 (11th Cir. 1997), or when the plaintiff establishes a prima facie case, but cannot establish pretext sufficient to rebut the employer's legitimate nondiscriminatory reasons for its actions, <u>see</u> <u>Grigsby v. Reynolds Metal Co.</u>, 821 F.2d 590, 597 (11th Cir. 1987).

The Family Medical Leave Act allows eligible employees to take up to twelve weeks of unpaid leave during a twelve month period, for reasons which include, among other things, "a serious health condition that makes the employee unable to perform the functions

of the position of such employee." 29 U.S.C. § 2612(a)(D). The Family Medical Leave Act defines a "serious health condition" as

> an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential care facility; or (B) continuing treatment by a health care provider.

29 U.S.C. § 2611. To be eligible for medical leave under the Family Medical Leave Act, an employee is also required to provide her employer with adequate notice of her need for leave. 29 U.S.C. § 2612(e); 29 C.F.R. § 825.302-825.304.

In the ordinary breach of contract action, the claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) [her] own performance under the contract, (3) the defendant's nonperformance, and (4) damages. <u>Southern Medical Health Systems, Inc. v. Vaughn</u>, 669 So.2d 98, 99 (Ala. 1995).

### III. DISCUSSION

After reviewing the entire record, and construing the facts in favor of the plaintiff, this Court finds that defendant is entitled to judgment as a matter of law on three of plaintiff's claims.

Plaintiff has asserted claims against defendant for: (1) retaliation, (2) gender discrimination, (3) violating the Family and Medical Leave Act, and (4) breach of contract.

1.  Retalitory Discharge

Plaintiff's retaliation claim falls on its face for two reasons: 1) there is no evidence that plaintiff was engaged in statutorily protected activity; and 2) there is no evidence of a

causal connection.

Plaintiff admits that she never complained about alleged sexual harassment by Purser. She merely reported the "baby formula" and expense account incidents which clearly were not gender related.

Plaintiff has adduced no evidence that the decision by Gillian and Rivera to disallow an unlimited leave of absence for marital problems and their refusal to rescind her tendered resignation was "causally related" to her reports to Rhodes and/or Torres–which occurred twelve months earlier.

2.   Gender Discrimination

Plaintiff has adduced sufficient evidence to support an inference of prima facie gender discrimination. Defendant's has articulated a legitimate non-discriminatory reason for refusing to rescind plaintiff's tendered resignation: that plaintiff voluntarily resigned and had recently failed to report to work without calling during UPS's busiest time of the year. Plaintiff, through the evidence of a similarly situated employee, Scott Wade, has offered sufficient evidence to support a reasonable inference that defendant's legitimate nondiscriminatory reason is a pretext for discrimination. Because plaintiff has raised a triable issue of fact on the gender discrimination claim, summary judgment must be denied.

3.   Family and Medical Leave Act

Plaintiff's Family and Medical Leave claim fails as a matter of law because the basis of her request for leave clearly is not covered by the FMLA. Initially, plaintiff stated that she wanted a leave of absence due to "personal problems." Without dispute, these personal

9

problems relate to marital difficulties.

The FMLA does not cover leaves of absence for marital difficulties.

To the extent plaintiff claims she had a serious health condition relating to her miscarriage, it is undisputed that she did not provide notice to UPS of any such health condition as required under the FMLA and its implementing regulation.

Summary judgment must be granted in favor of the defendant with respect to this claim.

4. Breach of Contract

Equally beyond question is that UPS performed its basic obligation to plaintiff under the Manager's Incentive Program. It is undisputed that UPS sent plaintiff a check in February 1998 representing the full amount due to her. Moreover, plaintiff has not shown any legally cognizable damage as a result of the alleged breach of contract.

UPS is due summary judgment on this claim.

By separate order, summary judgment will be GRANTED, in part, and DENIED, in part.

DONE this 8th day of August 2000.

United States District Judge
U.W. Clemon